Keith ROMINE, Appellant,

v.

STATE of Indiana, Appellee.

No. 282S70.

Supreme Court of Indiana.

Nov. 17, 1983.

Daniel L. Weber, James W. Boswell, Terre Haute, for appellant.

Linley Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for appellee.

DeBRULER, Justice.

Defendant-appellant, Keith Romine, was convicted of murder in the stabbing death of his wife, following a trial by jury. A judgment of guilty was thereafter rendered and defendant was given a sentence of fifty years. He now appeals.

Defendant raises several errors on appeal which include questions regarding the admissibility of his pre-trial statements, prior threats against the victim, and photographs of the victim's body, and the sufficiency of a jury admonition.

Appellant Romine and his wife Tammy were at R.J.'s Bar in Terre Haute at 11:30 p.m. on February 19, 1981. They were acquainted with others there. The two argued and he left, returning an hour later. He was then seen standing near her. She then fell to the floor, and he hurriedly left. She was found to be stabbed and died shortly thereafter at the hospital.

A couple of hours later, at 5:00 a.m., appellant appeared at the trailer of a friend. He told his friend that he had stabbed Tammy and he thought she was dead. The friend testified that appellant was not drunk and did not appear to be on drugs, and that his speech was not slurred, he did not stagger or stumble and appeared to know what he was saying. Appellant hugged his friend several times and his friend could not detect the smell of alcohol. Appellant pulled a knife out and showed it, saying that he had stabbed Tammy with it. There was blood on the knife. Appellant then called his mother on the telephone and stated that he had killed his wife and was going to kill himself rather than go to prison, and described to her the type of funeral he wanted for himself and his wife.

At 6:00 or 6:30 a.m., two police officers arrived at the trailer and arrested him. They found him in a bedroom sitting on a bed in a state of suicidal depression with the knife at his own chest. One of the officers talked with him for fifteen or twenty minutes and ultimately convinced him to give him the knife. When he gave the knife over he said: "Here, this is evidence." They moved into the kitchen of the trailer where appellant was informed of his privilege against self-incrimination and right to counsel. Appellant then said, she was up there and there was nothing he could do. Appellant testified on his suppression motion that he was then drunk, under the influence of marijuana, had not slept for two days, and had recently learned that his wife had died. The officers testified that he was sober and knew what he was doing.

By 8:30 a.m., appellant was in the station-house, and was again read his *Miranda*

rights, and this time signed a written waiver of those rights. He then discussed the case in general form with police. At one point in the discussion appellant stated to his interrogators, "Oh, I'd better wait till I talk to an attorney." Whereupon one of the interrogators did respond. "We told him that was his right if he wanted to stop answering. Then he started talking on it again." That testimony continued:

"Q. Okay. Did he start up again on his own—as you recall?

A. As I remember, yeah.

Q. Did anybody—I shouldn't say anybody—did any of the three of you attempt to contact his attorney?

A. No."

Appellant then engaged in giving a formal written confession in question and answer form in which it was recorded that he admitted stabbing his wife at the R.J.'s Bar.

## I.

Romine first claims that it was error for the court to permit introduction of his two statements made in the trailer at the time of arrest. A motion to suppress and an in-trial objection founded on the basis that the first statement was made without a precedent advice of rights or waiver of rights, and that the second statement was made without a sufficient showing of a valid waiver of rights, all as required by the safeguards erected by *Miranda v. Arizona,* (1966) 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, were made and overruled.

■ The purpose of requiring the police to follow these procedural safeguards is to dispel the atmosphere of coercion that necessarily accompanies custodial interrogations. *Miranda v. Arizona,* 384 U.S. at 467, 86 S.Ct. at 1624. The safeguards do not apply, and no showing of a valid advice of rights and waiver of rights is required, where custodial interrogation is not conducted. *Edwards v. Arizona,* (1981) 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378. Interrogation was defined in *Rhode Island v. Innis,* (1980) 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297, as "words or actions on the part of the police (other than those normal-

ly attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." Custody was defined in the *Miranda* case as action of the police officer which deprives a person of his freedom of action in any significant way.

■ The first challenged statement, "Here, this is evidence," was made as appellant handed over the knife to the arresting officer. He had been coaxed by the officer over a period of fifteen minutes to give up his suicide plan. During that time a two inch thrust of the knife to the chest would have ended appellant's life. Undoubtedly, the events leading to the victim's death were a subject of the verbal give and take of the conversation between the two men. Such conversation would occur in similar situations wherein, for example, a suspect has positioned himself on the ledge of a tall building, threatening to jump or has barricaded himself into a building, intent upon resisting arrest by force. Verbal efforts by police officers to persuade such excited persons not to injure themselves or others are not interrogation. Here, the acts and words of the arresting officer were not reasonably aimed at the admission which the trial court permitted to be introduced.

■ The second statement made by appellant that his wife was "up there" and there was nothing he could do was made in response to the advice of rights read to appellant in the kitchen of the trailer. It was similarly not the product of interrogation as defined because an advisement of rights is not reasonably likely to elicit an incriminating response. *Cf. Rhode Island v. Innis, supra.* The advice of rights given to one who has just been arrested, given its natural force, alerts an arrestee to the hazards of speech. That this simple advisement of rights by arresting officers can trigger a confession of guilt cannot be doubted, however, such confessions are not regarded as having been made in response to interrogation. *New v. State,* (1970) 254 Ind. 307, 259 N.E.2d 696. They are most likely the product of the suspect's remorse

and the discomfort of silence in the face of implicit accusation. The prosecution did not therefore bear the burden of showing an advisement of rights and knowing and voluntary relinquishment of such rights as a condition of introducing these two statements made in the trailer by appellant, and there was no error on the basis urged.

## II.

■ Appellant next claims that the trial court erred in permitting the introduction of his written confession. The claim made is that the State failed to demonstrate that it was given after a valid waiver of counsel. The *Miranda* case envisions the circumstances presented here, where, after a complete advisement of rights and an express waiver and the commencement of custodial interrogation, the suspect then specifically invokes the right to counsel. At that point interrogation must cease until counsel is provided. A confession procured upon further interrogation after that point without counsel present is inadmissible unless, upon the particular facts and circumstances surrounding the case, including the background, experience, and conduct of the suspect, the State proves beyond a reasonable doubt that the suspect then voluntarily, knowingly and intelligently relinquished or abandoned the right to counsel. *Edwards v. Arizona, supra. Cf. Bryan v. State,* (1982) Ind., 438 N.E.2d 709. A confession given after the invocation of the right to counsel may also be admissible if the suspect initiates the statement and the interrogators merely listen to it. Such confessions are considered voluntary, volunteered statements to which the safeguards of *Miranda* do not apply. *Edwards v. Arizona, supra.* In that case the Supreme Court held:

"Second, although we have held that after initially being advised of his *Miranda* rights, the accused may himself validly waive his rights and respond to interrogation, see *North Carolina v. Butler, supra,* 441 U.S. [369] at 372–376, 99 S.Ct. [1755] at 1757–1759 [60 L.Ed.2d 286 (1979) ], the Court has strongly indicated that addi-

tional safeguards are necessary when the accused asks for counsel; and we now hold that when an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights. We further hold that an accused, such as Edwards, having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges or conversations with the police." *Edwards v. Arizona,* 101 S.Ct. at 1884–85.

■ Here the prosecution presented strong evidence that appellant was sober and alert during the crime, the subsequent events in the trailer and at the stationhouse. He was remorseful and had a strong desire to tell others of his crime. He was twice read his *Miranda* rights and immediately before custodial interrogation intentionally and knowingly relinquished his right to counsel and willingly subjected himself to interrogation. His invocation of the right to counsel, while sufficient, was not without ambiguity with regard to the specific concern which propelled it. In response, the police stopped the interrogation and treated the statement respectfully. In this sense the prosecution showed more than "that he responded to further interrogation," *Edwards v. Arizona,* 101 S.Ct. at 1885. After this cessation of interrogation and respectful recognition of the right, appellant then went on and initiated further conversations with the police. The written statement, State's Exhibit No. 7, commences with an advisement of rights. The exhibit itself is very short, and in substance states that appellant stabbed his wife with the knife he had at the time of his arrest and that she died. From the foregoing circumstances we are convinced that the prosecution sustained its burden of demonstrating a knowing and intelligent and voluntary relinquishment of the right to coun-

sel. He was fully aware of the right, elected to invoke it, knew that the police recognized that they were duty bound to and would stop interrogation in response, and then when faced with the reality of a cessation in the interrogation process changed his mind and chose to forge on without a lawyer. The confession was preceded by a valid waiver of counsel and was therefore not inadmissible on the basis argued.

### III.

■ Testimonial support for State's Exhibit 3 was given by Officer Ciolli. The exhibit is a photograph depicting the right hand of the appellant covered with a reddish substance. The photo was taken by the witness at 7:00 a.m., on the day of the crime. The witness testified that the hand was covered with what appeared to the witness to be blood. An objection was made to the introduction of the exhibit which was sustained by the court. The court gave the following admonishment:

> "Alright, at the request of the State I would admonish the jury to—they are to strike from their minds as it will be stricken from the record—any reference to the photograph which was Plaintiff's Exhibit Three—and you are not to take that into consideration in any way."

Appellant claims that the admonishment was insufficient in that it contained no express reference to the testimony of Ciolli that the substance portrayed therein appeared to him to be blood.

At trial the exhibit was not passed to the jury for inspection. The information received by the jury was limited to the Ciolli testimony. We hold therefore that the admonition to the jury that they should not consider "any reference" to the photograph would have been received by the jury as meaning any "testimonial" reference to the photograph, and was therefore broad enough to foreclose the mischief identified by appellant.

### IV.

A witness for the prosecution testified that in February, 1978, more than three years before the incident in the R.J.'s Bar, appellant Romine threatened the victim with a knife to her throat and made the statement, "You are going with me or else." Romine objected to the testimony on the ground that it was not relevant to the issues. The objection was overruled.

■ Appellant was charged with murder, an element of which is the knowing state of mind. Ind.Code § 35–42–1–1. The information stated that appellant had knowingly killed the victim by stabbing her with a knife. In a homicide case, the law permits the State to introduce prior threats and assaults upon the victim by the accused to prove state of mind. *Moore v. State,* (1981) Ind., 414 N.E.2d 558. Appellant contends that a three year old threat is so remote as to have no relevance, particularly where the threat was between spouses. The point is in general terms arguable, but here, the relationship of the two was ongoing and the prior threat was accompanied with a vicious assault by knife, the very type of weapon used in the killing. These discrete similarities clearly bring the former event into the realm of matter relevant to state of mind. It was not error to permit this testimony to be heard by the jury.

### V.

Appellant next claims that the trial court committed error when it overruled his objection to State's Exhibits 1 and 2, photographs depicting the naked upper torso of the victim's body in the morgue. Defense counsel objected to the photos on the basis that they would have confused the jury and prejudiced him. Depicted in the photographs are multiple incisions, one made by the murder weapon, and others made by the emergency room physician who performed a surgical procedure in order to reach the heart and stem the blood and thus save the victim's life. The body is clean, the eyes are closed, and the incisions are sutured shut. Appellant's claim is that the jury would not be able to sort out those incisions which were inflicted by the assailant and those made by the physicians and may have

concluded that the attacker made the grosser cuts.

A photograph of the corpse of the victim in a homicide case is relevant to prove the identity of the victim and as an aid to understanding the pathologist's findings on cause of death. *Fryback v. State,* (1980) 272 Ind. 660, 400 N.E.2d 1128. Prejudice to the right of the accused to a fair trial may outweigh minimal relevance and dictate exclusion. *Brandon v. State,* (1978) 268 Ind. 150, 374 N.E.2d 504. However, here the potential for such prejudice does not rise to that level. The pathologist pointed out for the benefit of the jury those wounds caused by the physician and those caused by the murder weapon. There was other evidence that the victim had been stabbed. Accordingly we find no error in the ruling of the trial court here.

The conviction is affirmed.

GIVAN, C.J., and HUNTER, PRENTICE and PIVARNIK, JJ., concur.