**Arthur Wayne THOMAS, Appellant,**

v.

**STATE of Indiana, Appellee.**

**No. 75S00–8904–CR–291.**

Supreme Court of Indiana.

May 4, 1990.

Martin R. Lucas, North Judson, for appellant.

Linley E. Pearson, Atty. Gen., Arthur Thaddeus Perry, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Justice.

A jury trial resulted in a conviction of Murder, for which appellant received a sentence of sixty (60) years.

The facts are: On July 5, 1987, Carol Thomas and her children returned home unexpectedly and observed appellant engaging in sexual intercourse with one of the family dogs. Two days later Carol consulted with her attorney, and the next day a dissolution of marriage petition was filed and a restraining order was obtained against appellant.

On September 26, 1987, Carol had blood on her face and a torn ear and claimed that appellant had raped her. Charges were filed against appellant for sexual battery arising from that incident. These charges were pending in court at the time of Carol's death, for which appellant stands convicted.

Evidence was introduced at trial that appellant had beaten Carol on several occasions and had threatened to kill her. On the day of her death, she told the manager and another employee of the Pizza Hut where she worked that her husband had called her the night before and had stated that he would kill her before he would let her get a divorce. Roger Bailey, a neighbor, testified that appellant told him that he would kill his wife if she did not drop her dissolution of marriage proceeding.

On November 3, 1987, Carol left her place of employment at approximately 2:00 p.m. At 2:45 p.m., Charles Winbigler heard two voices—one female and one male, who apparently were arguing—coming from the direction of the Thomases' residence. When no one came to pick up the Thomases' children, they were driven home from school by a teacher about 4:00 p.m. At that time, they discovered Carol's body, nude except for a brassiere, in the dog pen behind the Thomases' mobile home.

Shortly thereafter, while the police were there investigating, the telephone rang and was answered by appellant's son, Jack. Jack testified that the party calling was appellant and that he stated, "She deserved to die." The State Police then contacted appellant by telephone, and when told that his wife was dead, he stated he had heard about it, and it was for the best. He then questioned the trooper as to whether he was in fact a state police officer and stated, "You ain't no state cop or you'd be up here to pick me up." Shortly thereafter, when police took appellant into custody, they observed scratches on his face, forearm, and collarbone area, as well as smaller scratches and abrasions elsewhere on his body.

At the time of this incident, appellant was living with Mr. and Mrs. Sebastian in Elkhart, Indiana. Mrs. Sebastian testified that when she returned home at 4:00 in the afternoon appellant was not there. She left home shortly and returned about 7:15 to 7:30 p.m., by which time appellant had returned, and had scratches on his face and arms. He stated that he had obtained the scratches while working on his truck at Whiteford Trucking in South Bend. Earlier, however, when asked where he had been, he stated that he had gone to Warsaw to pick up his paycheck and then had eaten a meal at a Ponderosa Restaurant.

Appellant in fact did have his truck at Whiteford Trucking being repaired. However, Mike Dudley, who works for Whiteford, stated that he knew appellant; on the day in question, he worked until 5:00 p.m., but he did not see appellant.

Steve Meyers, who also works for Whiteford, worked from approximately 4:00 p.m. until 1:00 a.m. and stated that appellant called between 6:30 and 8:30 p.m., that the conversation lasted between fifteen and twenty minutes, and that appellant sounded nervous and upset. When Meyers asked him about it, appellant stated that he had been arguing with his wife. Medical examination disclosed that Carol's death was caused by a severe beating.

Appellant claims the trial court erred in permitting hearsay evidence that Carol had

expressed fear that appellant would kill her. Several witnesses testified to statements made by Carol after she had discovered appellant having sexual intercourse with one of the dogs. Some of the witnesses testified as to Carol's physical condition and her statement that her injuries were inflicted by appellant. This precipitated the criminal charge against appellant, which was pending at the time of Carol's death.

■ Appellant concedes that the case of *Drummond v. State* (1984), Ind., 467 N.E.2d 742 holds that evidence of this type is admissible under certain circumstances. However, he contends that the ruling in *Drummond* was modified by this Court in *Komyatti v. State* (1986), Ind., 490 N.E.2d 279. However, the *Komyatti* case is distinguishable from *Drummond*. In *Komyatti* the defendant had called a family attorney as a witness and had sought to have him testify as to why the victim had left certain persons out of his will. The trial judge allowed the attorney to testify as to what he did, but he did not permit the hearsay testimony as to why the testator had written the will as he did. We do not perceive that to be a parallel situation with the case at bar.

Appellant is correct in his observation that the state of mind of the victim in this case is not in question. It also is true that many jurisdictions have held that hearsay statements of a deceased victim concerning threats by the accused are not admissible. *See* 40 Am.Jur.2d *Homicide* § 334 (1968) (1989 Supp.).

However, in the case at bar, we do not have statements made on previous occasions which have no connection with the homicide at issue. In the case at bar, we have a highly emotional situation in which a divorce action was filed following the incident between appellant and the dog. There is ample evidence in this record, aside from the hearsay testimony, that appellant in fact did threaten to kill his wife and that following the killing he expressed satisfaction that it had occurred.

In each incident, when witnesses were allowed to testify over appellant's hearsay objection, they testified to physical injuries, which they observed, upon the person of Carol and were permitted to testify that her explanation of the injuries was that appellant had inflicted them.

Under the authority of *Drummond, supra*, this evidence was admitted to show the state of mind of appellant and his attitude toward the decedent. Although the statements by some of the witnesses in fact were hearsay as to the source of the victim's prior injuries, the deceased's statements were made in conjunction with severe personal injuries and were demonstrated to have been made in explanation of appellant's actions in a short-term highly volatile situation. Under such circumstances, we cannot seal the lips of the decedent and permit appellant to proceed before the jury on the premise that he had not abused the victim prior to her death.

■ We also would point out that even if we would assume for the sake of argument that the trial court erred in permitting hearsay evidence of appellant's abuse of the victim, such evidence merely was cumulative of direct evidence that appellant had told his neighbor that he would kill Carol rather than allow her to obtain a divorce and the further evidence that Carol was the prosecuting witness in a charge of sexual assault which was pending against appellant at the time of Carol's death.

Under these circumstances, the hearsay testimony merely was cumulative evidence of appellant's attitude toward Carol and his motive for killing her. Under such circumstances, error, if it be such, would not constitute reversible error. *Coleman v. State* (1989), Ind., 546 N.E.2d 827; *Hodges v. State* (1988), Ind., 524 N.E.2d 774; *Watkins v. State* (1984), Ind., 460 N.E.2d 514.

■ Appellant contends the trial court erred when it allowed Sandy Thomas to testify that she had observed appellant engaging in sexual intercourse with one of the family dogs. Sandy was appellant's daughter who had returned home unexpectedly in the evening and observed appellant naked in the dog pen having sexual intercourse with one of the dogs. It was

this incident which led to the filing of the dissolution action.

Appellant objected on the ground that the evidence was irrelevant and that it would serve only to inflame the jury. He further denied that any such activity took place. In the case at bar, the incident with the dog was the triggering factor in the filing of the dissolution, and in turn, the filing of the dissolution was the triggering factor in appellant's rage and abusive conduct toward the victim. Circumstances of strained relations between husband and wife are relevant in a domestic violence case. *Haggenjos v. State* (1982), Ind., 441 N.E.2d 430. We see no reversible error in the admission of this testimony.

■ Appellant claims the trial court erred in admitting evidence that the victim had instituted a charge of sexual battery against him, which charge was pending at the time of her death. Appellant takes the position that it is error to show a criminal charge which did not result in a conviction. This of course is the general law concerning evidence of prior offenses. However, in the case at bar, a charge filed by the victim against the appellant was an integral part of the volatile situation between the parties. The fact that the victim was beaten to death before the matter came to trial is no viable reason why the evidence of the filing of the charge should not have been admitted in evidence. Such evidence was admissible under the authority of *Haggenjos, supra.*

■ Appellant contends the trial court erred in overruling his motion for judgment on the evidence. It is true that no one witnessed the beating which caused the victim's death nor was there any other direct evidence to connect appellant with the attack. However, a guilty verdict may be supported by circumstantial evidence alone. *Harris v. State* (1981), Ind., 425 N.E.2d 112. The evidence in this case, as above recited, is ample to support the verdict of the jury.

Appellant claims the trial court abused its discretion in sentencing him to sixty (60) years imprisonment. Appellant contends that although the trial judge recited aggra- vating circumstances in his informal state- ment concerning the case, he did not recite the aggravating circumstances in his for- mal sentencing. He cites *Page v. State* (1982), Ind., 442 N.E.2d 977 and Ind.Code § 35–38–1–3.

In conjunction with this claim, appellant points out that he objected to the presen- tence investigation filed by the probation officer and filed a proposed amended pre- sentence report. The trial court rejected his proposed amendment. Appellant claims the presentence investigation contained a section entitled, *"Present Offense: (Defen- dant's Version)."*

Appellant contends it was error to label the probation officer's statement as, "De- fendant's Version" when he in fact had tendered an amendment which was his true version of the occurrence. He claims the trial court, in so-acting, deprived him of his right to be free from self-incrimination. It is the statutory duty of the trial court to order a presentence investigation and a duty of the assigned probation officer to make such report.

■ We know of no authority, nor does appellant cite any authority, for the propo- sition that the defendant should be permit- ted to amend the probation report filed by the officer. Certainly, appellant has the right to challenge such report and to state to the court his version of the situation. However, to allow him to replace the proba- tion officer's report or any part thereof with his own language would be to create an intolerable situation.

■ We do note that in sentencing appel- lant the trial court merely recited that there were aggravating circumstances. He made no attempt in the sentencing to artic- ulate those circumstances. This is in viola- tion of the statute.

This cause is remanded to the trial court for proper sentencing. If an enhanced sen- tence is to be levied, the court must artic- ulate the aggravating circumstances to support such sentence. On all other issues, the trial court is affirmed.

PIVARNIK and DICKSON, JJ., concur.

DeBRULER, J., dissents with separate opinion in which SHEPARD, C.J., concurs.

DeBRULER, Justice, dissenting.

Several prosecution witnesses were permitted, over hearsay objection, to testify that shortly before her death, the victim displayed to them her injuries, that she attributed them to an attack by appellant, and that she said she was afraid appellant would kill her. This evidence was presented to show prior threats and assaults upon the victim by appellant, which in homicide cases are deemed relevant. *Romine v. State* (1983), Ind., 455 N.E.2d 911. For this purpose, the testimony of these witnesses describing the victim's statements, that it was appellant who had beaten her and that she feared he would kill her, was hearsay and should have been excluded. *Dunaway v. State* (1982), Ind., 440 N.E.2d 682. The testimony here, unlike that in *Dunaway,* had nothing to do with explaining any conduct of the victim. The case of *Drummond v. State* (1984), Ind., 467 N.E.2d 742, is not a contrary authority, as there, the appellant accepted the proposition that such evidence was admissible under the state of mind exception to the hearsay rule and argued that the evidence was irrelevant. Here, appellant does not accept that proposition, and he is clearly correct. Furthermore, the identification of appellant as the attacker is circumstantial, and I believe that the conviction rests in part upon the repeated use of this hearsay evidence. During final summation, the trial prosecutor drew specific attention to the hearsay statements by the victim, claiming that she had made the statements sincerely and had meant them. I am therefore unable to conclude that the error in the admission of this hearsay evidence was harmless. I vote to reverse and remand for a new trial.

SHEPARD, C.J., concurs.