**Gary GUENTHENSPERGER, Appellant,**

**v.**

**STATE of Indiana, Appellee.**

**No. 40S00–8909–CR–689.**

Supreme Court of Indiana.

Feb. 14, 1991.

Rehearing Denied April 23, 1991.

William H. Stone, Columbus, for appellant.

Linley E. Pearson, Atty. Gen., Geoff Davis, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Justice.

A jury trial resulted in the conviction of appellant of Murder, for which he received a sixty (60) year sentence.

The facts are: Appellant and his wife, Diana, the victim in this case, lived in North Vernon, Indiana with their two children. They had separated in 1983 but reconciled and remained married until Diana's death.

Prior to Diana's death, appellant learned that his girlfriend, Jill Cann, with whom he had been having an affair, was pregnant with his child. It was only then that Cann learned that appellant had not divorced his wife and became upset. Appellant told Cann that he thought "something really bad" was going to happen to his wife, and he thought she would be dead. He also had told Cann that he wanted his wife to stay away from him and that he wanted to kill her.

On March 2, 1989, appellant and Diana ate breakfast and their 9–year-old daughter left for school. Later that morning, Diana drove their 5–year-old son to kindergarten. Diana then returned home. Appellant left for work at approximately 12:40 p.m. and arrived at work at 1:05 p.m. At 4:00 p.m., the children came home from school but found the door locked. The daughter removed a plastic cover from a window that

previously had been broken and saw her mother lying in the hallway. She and her brother then started down the road and met their Aunt Bonnie who took them to their grandmother's home where they obtained keys to enter the house.

The grandmother went inside and found that Diana was dead. There were no signs of forced entry to the house, the interior was in order, nothing was missing, and there was no indication that Diana had struggled with her killer or that she had been sexually assaulted. The cause of death was found to be two .22 caliber bullet wounds—one in her back and one in her neck. The pathologist estimated that she had died between 1:00 p.m. and 3:00 p.m.

When appellant first was interviewed by police, he stated that he only had three guns, which the police were able to locate in the house. Later, however, the victim's brother notified police that appellant had a .22 caliber automatic handgun which he had not revealed. Upon confrontation, appellant admitted he owned such a gun and directed them to where it could be found. It was underneath cardboard in a cabinet in appellant's garage. However, when the police examined the gun, they found that the barrel and firing pin had been mutilated. Because of the mutilation, the firearm's examiner was unable to determine if the bullets removed from the victim's body were fired by that gun. He further testified that he knew of no legitimate reason for a gun owner to alter the gun in that manner.

Appellant claims the trial court erred in permitting the State to introduce evidence that some seven years before Diana's death they were having difficulties, and Diana was staying with friends. Appellant went to their trailer home and asked to see Diana. While he was conversing with her in the trailer, he fired a gun which struck the wall of the trailer some five feet to the right of where Diana was seated. Appellant takes the position that this incident was too remote in time and was not relevant in that any tendency it might have to prove an element of a crime was far outweighed by its potential for inflaming the jury.

Evidence of uncharged misconduct is admissible to show intent, motive, common scheme or plan, or identity. *Sharp v. State* (1989), Ind., 534 N.E.2d 708, *cert. denied*, —— U.S. ——, 110 S.Ct. 1481, 108 L.Ed.2d 617; *Grimes v. State* (1983), Ind., 450 N.E.2d 512. Evidence of a defendant's prior assaults, batteries, or threats against a homicide victim is admissible to prove motive. *Meyers v. State* (1989), Ind., 547 N.E.2d 265, *cert. denied*, —— U.S. ——, 110 S.Ct. 1954, 109 L.Ed.2d 316; *Romine v. State* (1983), Ind., 455 N.E.2d 911. We also have said that motive is always relevant in the proof of a crime. *Webb v. State* (1983), Ind., 453 N.E.2d 180, *cert. denied*, 465 U.S. 1081, 104 S.Ct. 1449, 79 L.Ed.2d 767; *Johnson v. State* (1970), 254 Ind. 465, 260 N.E.2d 782. Identity was an issue in this case because appellant filed a notice of alibi and claimed that he was not the person who perpetrated the crime.

Appellant attempts to distinguish prior cases which permit evidence of prior assaults against a murder victim by stating that the prior cases are all instances wherein the victim actually was harmed in the prior attack. We see no legitimacy to this argument. As stated above, the rule is that prior *assaults*, batteries, or *threats* against a victim are admissible. In the case at bar, the evidence presented of the prior occurrence demonstrated both an assault and an implied threat.

The fact that a battery was not perpetrated because the bullet did not strike the victim does not mean that an assault was not perpetrated or that at least an implied, if not an actual, threat was not made. The trial court was well within its discretion in permitting the evidence to be presented to the jury and did not err when it refused to strike the testimony after it had been given.

The trial court is affirmed.

SHEPARD, C.J., and DeBRULER, DICKSON and KRAHULIK, JJ., concur.