**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANT:

**C. ROBERT RITTMAN**
Grant County Public Defender
Marion, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**CYNTHIA L. PLOUGHE**
Deputy Attorney General
Indianapolis, Indiana

**FILED**

Dec 31 2012, 10:57 am

**CLERK**
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| DAMON GEE, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 27A02-1203-CR-257 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE GRANT SUPERIOR COURT
The Honorable Dana J. Kenworthy, Judge Pro Tempore
Cause No. 27D02-1111-FB-321

**December 31, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BROWN, Judge**

Damon Gee appeals his convictions for possession of a stolen vehicle as a class D felony and possession of a firearm by a serious violent felon as a class B felony and his adjudication as an habitual offender. Gee raises three issues which we revise and restate as:

I.      Whether the evidence was sufficient to sustain his conviction for possession of a stolen vehicle;

II.     Whether the court abused its discretion in admitting a statement by Gee; and

III.    Whether the court abused its discretion in allowing the State to amend its habitual offender information.

We affirm.[1]

The relevant facts follow. On November 12, 2011, Marion Police Officer Darrell Jackson arrived at an apartment complex in Marion, Indiana, after being dispatched there to investigate a disturbance or battery. Officer Jackson knocked at the door, and Gee answered the door and allowed him to enter. Officer Jackson spoke with Gee and his girlfriend, "found out everything was okay," and offered to give Gee a "ride to go where he wanted" because it is common to separate parties who had been arguing, and Gee accepted the offer. Transcript at 163. Officer Jackson instructed Gee to sit in the back seat because his front passenger seat was cluttered with items and Gee entered the back passenger's side and "was calm." Id. at 165. Officer Jackson then heard the "chirp" of a keyless remote locking a vehicle and his attention was directed to a black pickup truck

---

[1] We note that Gee's brief contains a copy of the court's order on Gee's motion to suppress evidence but does not contain the abstract of judgment or judgment of conviction. Ind. Appellate Rule 46(A)(10) provides that the appellant's brief "shall include any written opinion, memorandum of decision or findings of fact and conclusions thereon relating to the issues raised on appeal. . . ."

parked outside of the apartment complex. Id. Sergeant Warland Artis had arrived on the scene by that point and approached the vehicle and noticed a folded napkin on the dashboard shielding the truck's Vehicle Identification Number ("VIN") from view. The placement of the napkin made Sergeant Artis suspicious because, based upon his twenty-three years of experience, he knew that it was a method to attempt to hide the VIN of a stolen vehicle.

Officer Jackson eventually discovered another VIN on the truck and attempted to run a check on the number, but he read the number incorrectly and "it came back not on file." Id. at 166. As he was investigating the truck and calling in the VIN, however, Officer Jackson noticed that Gee's mannerisms changed and specifically that Gee "started fidgeting around in [the] vehicle and acting a little nervous." Id. When Officer Jackson told Gee that the VIN was not on file Gee "calmed down and started talking normally . . . ." Id. at 167. Sergeant Artis ran the license plate on the truck and the plate "came back to a different vehicle." Id. at 131. Also, Officer Jackson discovered his initial error in reporting the VIN and called it in again, and he learned that the truck had been reported stolen in March of 2010. Officer Jackson then placed Gee under arrest for possession of a stolen vehicle.

Officer Jackson and Sergeant Artis searched the vehicle and discovered two identification cards for Gee from Kentucky and Indiana, letters addressed to Gee, and a box of ammunition and a holster. Sergeant Artis told Officer Jackson that he suspected that a gun was also in the truck, and Sergeant Artis then heard Gee, who was sitting in the

3

back of Officer Jackson's police car, state that "[i]f there is a gun, it's in the back." Id. at 279. Officer Jackson located a gun in the vehicle.

Officer Kyle Griffith was dispatched to the scene to transport Gee to jail, and as Officer Griffith was walking Gee to his police car Gee complained that one of the cuffs was too tight and asked that it be loosened. When Officer Griffith attempted to loosen the handcuff, Gee pulled the hand from behind his back and placed it on the hood of Officer Griffith's car. Officer Griffith ordered Gee to place the hand back behind his back, but Gee refused. Gee then shoved Officer Griffith into Sergeant Artis and started running. Officer Griffith pursued Gee into a wooded area where he eventually caught Gee. Officer Griffith attempted to apply a taser, but Gee was able to grab it and began to turn it towards the officer. Officer Griffith struck Gee and forced him to drop the taser and eventually was able to secure him. The keys to the pickup truck were recovered from Gee.

On November 14, 2011, the State charged Gee with Count I, possession of a firearm by a serious violent felon as a class B felony; Count II, possession of a stolen vehicle as a class D felony; Count III, resisting law enforcement as a class A misdemeanor; Count IV, resisting law enforcement as a class A misdemeanor; and Count V, escape as a class C felony. An initial hearing was held on November 15, 2011, and the court set the omnibus date for January 15, 2012 and a jury trial for January 24, 2012 as a fast and speedy trial. On January 13, 2012, Gee filed a motion to suppress statements by him made prior to being Mirandized. Gee also filed a request for a bifurcated trial. On January 17, 2012, the State filed an habitual offender charging

information.  On January 19, 2012, following a hearing, the court granted Gee's motion to suppress in part but denied the motion in part regarding his statement that "[i]f there's a gun, it's in the back," ruling that the statement was a "spontaneous utterance" and "was not made in response to improper police questioning."  Appellant's Appendix at 37.

The court held a jury trial beginning on January 24, 2012, which consisted of three phases.  Phase one concerned Counts II-V in which evidence consistent with the foregoing was presented, and at one point the State orally moved to dismiss Count III which the court granted.  On January 25, 2012, the jury found Gee guilty as charged on Counts II, IV, and V.  The court then proceeded with phase two of the trial concerning Count I, and the jury found Gee guilty under Count I.

On January 26, 2012, prior to the start of phase three of the jury trial, the State filed an amended habitual offender enhancement which did not contain two of the four unrelated convictions contained in the original habitual offender information and which Gee objected to as untimely and requested a continuance.  The court overruled both the objection and request.  The court commenced phase three, and the jury determined that Gee was an habitual offender.  On March 5, 2012, the court held a sentencing hearing and sentenced Gee to twenty years on Count I, possession of a firearm by a serious violent felon, which was enhanced by twenty years due to the habitual offender adjudication for a total of forty years.  The court also sentenced Gee to three years for possession of a stolen vehicle, one year for resisting law enforcement, and eight years for escape, and it ordered that Gee serve his sentences concurrently but consecutively to another sentence

5

stemming from a probation violation. Thus, Gee was ordered to serve forty years in the Department of Correction.

## I.

The first issue is whether the evidence was sufficient to sustain Gee's conviction for possession of a stolen vehicle.[2] When reviewing the sufficiency of the evidence needed to support a criminal conviction, we neither reweigh evidence nor judge witness credibility. Bailey v. State, 907 N.E.2d 1003, 1005 (Ind. 2009). "We consider only the evidence supporting the judgment and any reasonable inferences that can be drawn from such evidence." Id. We will affirm if there is substantial evidence of probative value such that a reasonable trier of fact could have concluded the defendant was guilty beyond a reasonable doubt. Id. It is well established that "circumstantial evidence will be deemed sufficient if inferences may reasonably be drawn that enable the trier of fact to find the defendant guilty beyond a reasonable doubt." Pratt v. State, 744 N.E.2d 434, 437 (Ind. 2001).

The offense of possession of a stolen vehicle, also known as receiving stolen auto parts, is governed by Ind. Code § 35-43-4-2.5(c) which provides in relevant part that "[a] person who knowingly or intentionally receives, retains, or disposes of a motor vehicle or any part of a motor vehicle of another person that has been the subject of theft commits receiving stolen auto parts, a Class D felony. . . ." Thus, to sustain a conviction for possession of a stolen vehicle as a class D felony the State was required to prove that Gee

---

[2] Gee does not challenge his convictions for escape or resisting law enforcement.

knowingly or intentionally received, retained or disposed of the black pickup truck which had been the subject of theft.

Gee argues that "[w]hen receiving or possession of stolen property is charged, the unexplained possession must be accompanied by additional circumstances which support the inference that the accused actually knew that the property was stolen." Appellant's Brief at 6 (citing Fortson v. State, 919 N.E.2d 1136 (Ind. Ct. App. 2010); J.B. v. State, 748 N.E.2d 914 (Ind. Ct. App. 2001)). Gee argues that although the State presented circumstantial evidence that Gee possessed the truck, it did not present evidence establishing that Gee was aware that the truck had been stolen. Id. at 7. On this score, Gee notes that the truck was reported stolen in March of 2010, which was nearly two years prior to the date of his arrest.

The record reveals that when Officer Jackson offered to drive Gee to wherever he wanted following the argument, Gee accepted Officer Jackson's offer despite the fact that the pickup truck which he had been driving was parked outside and Gee had a key to the truck in his pocket. Gee was initially calm when interacting with Officer Jackson, but after Officer Jackson's attention was focused on the truck Gee's mannerisms changed and he "started fidgeting around in [the] vehicle and acting a little nervous." Transcript at 166. After Officer Jackson told Gee that the VIN was not on file, Gee "calmed down and started talking normally . . . ." Id. at 167. Also, Sergeant Artis observed that a folded napkin was placed on the dashboard in such a manner as to shield the VIN from view which made him suspicious because he knew based upon his experience that persons driving stolen vehicles will employ such tactics to hide the VIN.

7

Based upon our review of the record, we conclude that evidence of probative value exists from which the jury could have found Gee guilty beyond a reasonable doubt of possession of a stolen vehicle. See Barnett v. State, 834 N.E.2d 169, 172 (Ind. Ct. App. 2005) (holding that the defendant's knowledge that the property was stolen could be inferred from possession coupled with his false or evasive explanation).

II.

The second issue is whether the court abused its discretion in admitting a statement by Gee. The admission and exclusion of evidence falls within the sound discretion of the trial court, and we review the admission of evidence only for abuse of discretion. Wilson v. State, 765 N.E.2d 1265, 1272 (Ind. 2002). An abuse of discretion occurs "where the decision is clearly against the logic and effect of the facts and circumstances." Smith v. State, 754 N.E.2d 502, 504 (Ind. 2001). "Errors in the admission or exclusion of evidence are to be disregarded as harmless error unless they affect the substantial rights of a party." Fleener v. State, 656 N.E.2d 1140, 1141 (Ind. 1995) (citations omitted).

Gee argues that "[i]t might not be possible to determine the exact moment that his status became 'in custody,' but clearly that could be no later than when Officer Jackson placed handcuffs upon him," and he notes that "the State appears to agree that the statement in question[] was given while [he] was in custody . . . ." Appellant's Brief at 7. Gee argues that the police had already been asking Gee "multiple questions" by the time he made the purported statement, arguing: "They initially inquired as to what was going on?; Where he wanted to go?; Would he get into the officer's back seat?; What was the

8

situation between him and the black truck?" Id. at 8. Gee also notes that at the suppression hearing he "denied that he ever made any statement regarding a gun in the truck" and that "the trial court erred in determining that he made a voluntary or 'spontaneous utterance.'" Id.

The State argues that although he was in custody and handcuffed, Gee's statement was not a response to a police question and accordingly it is not protected by the Fifth Amendment. The State argues that "[t]he questions he offers as the 'interrogation' are hardly questions that fit within the definition of 'interrogation,'" noting that they were not "designed to elicit any incriminating response" and were "innocuous at best . . . ." Appellee's Brief at 11-12. The State also argues that even if the court's ruling was in error, such error is harmless because the statement was ambiguous and was "hardly a definitive admission." Id. at 12. The State asserts that "there is nothing in the record showing that the gun was found where [Gee] supposed the gun may be located." Id.

Initially, we note that to the extent Gee argues on appeal that the court erred in determining that he made a voluntary or spontaneous utterance regarding a gun being potentially located in the back of the pickup truck, such argument is merely an invitation that we reweigh the evidence and judge the credibility of the witnesses, which we will not do. Jordan v. State, 656 N.E.2d 816, 817 (Ind. 1995), reh'g denied.

Regarding Gee's suggestion that the statement should have been suppressed because it was given prior to receiving his Miranda warnings, we observe that this court has stated:

> Under the Miranda doctrine, a statement is not inadmissible if it is not the product of custodial interrogation. Staton v. State (1981), Ind., 428

9

N.E.2d 1203. Custodial interrogation includes, but is not limited to, questioning initiated by law enforcement officers after an accused has been deprived of his freedom in any significant way. Id. Miranda also applies to techniques of persuasion no less than express questioning in a custodial setting. Id. *However, it does not mean that all statements obtained by police from a person in custody are the product of interrogation.* Id. Interrogation must reflect a measure of compulsion above and beyond that inherent in custody itself. Id. Where there is no express questioning or its functional equivalent, and no evidence of compulsion beyond that inherent in the custody itself, a volunteered statement is admissible, and Miranda is not applicable. Id. Verbal efforts to obtain an accused's surrender or to prevent him from committing suicide or injury to others is not interrogation. Romine v. State (1983), Ind., 455 N.E.2d 911. Statements made while in custody which are the product of remorse and the discomfort of silence in face of implicit accusations are not subject to the Miranda doctrine. Id. *Wholly volunteered and unsolicited statements are not inadmissible because Miranda warnings were not given.* Lowery v. State (1985), Ind., 478 N.E.2d 1214; Woolston v. State (1983), Ind., 453 N.E.2d 965. Miranda rights must only be read prior to custodial interrogation, *and this request does not apply to volunteered statements.* [Woolston], *supra.* Officers are not required to give Miranda warnings, even assuming they have an opportunity to do so. Lowery, *supra.* Casual conversation by an officer with an accused about matters not concerned with the case is not interrogation. Lowery, *supra*; Smith v. State (1981), 275 Ind. 642, 419 N.E.2d 743. Not every statement made by a police officer is interrogation. Partlow v. State (1983), Ind., 453 N.E.2d 259, cert. denied, 464 U.S. 1072, 104 S. Ct. 983, 79 L.Ed.2d 219.

State v. Bowen, 491 N.E.2d 1022, 1024-1025 (Ind. Ct. App. 1986) (emphases added).

Here, the record reveals that while Officer Jackson and Sergeant Artis searched the vehicle, Sergeant Artis located a box of ammunition and a holster. Sergeant Artis then told Officer Jackson that he suspected that a gun was also in the truck, and he then heard Gee, who was sitting in the back of Officer Jackson's police car, state that "[i]f there is a gun, it's in the back." Transcript at 279. Gee's statement was volunteered and unsolicited, and thus the Miranda doctrine does not apply. Moreover, we agree with the State that even if the court abused its discretion in admitting the statement, any such error

10

was harmless because such an admission was not definitive and the record does not reveal that the statement led to the discovery of the gun. Indeed, the record does not reveal what part of the vehicle the gun was recovered from, and Gee does not challenge the propriety of the search of the vehicle. We therefore conclude that the court's admission of Gee's statement does not require reversal.

III.

The third issue is whether the trial court abused its discretion in allowing the State to amend the habitual offender information. Ind. Code § 35-34-1-5(e) provides:

> An amendment of an indictment or information to include a habitual offender charge under IC 35-50-2-8 . . . must be made not later than ten (10) days after the omnibus date. However, upon a showing of good cause, the court may permit the filing of a habitual offender charge at any time before the commencement of the trial.

In this case, the initial habitual offender information was filed on January 17, 2012, or two days after the omnibus date, alleged that Gee had "accumulated at least two (2) prior unrelated felony convictions," and listed four convictions as follows: (1) a 1997 conviction for carrying a handgun without a license with prior felony conviction as a class C felony; (2) a 1998 conviction for theft as a class D felony; (3) a 1996 conviction for receiving stolen property as a class D felony; and (4) convictions of four counts of armed robbery as class B felonies in 2001. On January 26, 2012, prior to phase three of Gee's trial, the State moved to amend the charging information by omitting the 1996 and 2001 convictions and instead relying solely on the 1997 and 1998 convictions. Gee objected to the State's motion as untimely and requested a continuance, and the court

11

overruled both the objection and request. Gee was found by the jury to be an habitual offender.

Gee argues that the State's response to his objection and request for a continuance did not rise to the level of "good cause" as required by the statute, "particularly since it was done only thirty minutes or so[] before the scheduled hearing." Appellant's Brief at 8-9. Gee also argues that the State's act of amending the habitual offender charge "deprived [him] of a defense based upon [an] unauthorized 'double enhancement' that would have entitled [him] to a reversal" of the habitual offender determination because it omitted armed robbery convictions from 2001 "which were utilized by the State the day before to enhance possession of the handgun up to a class B felony." Id. at 9.

The State argues that Gee's argument has no merit because the unrelated prior felony convictions contained in the amended habitual offender charge "were wholly included in the initial charge; thus, no additional preparation was necessary." Appellee's Brief at 14. The State admits that Gee is correct that it "was precluded from using the prior armed robbery conviction[s] as an undergirding prior conviction for both the serious violent felony charge and the habitual offender allegation," but it argues that he does not demonstrate prejudice because "even had the State used the armed robbery conviction as an extra prior felony conviction to support the habitual offender charge, this would not have resulted in vacating the jury's determination that [he] is a habitual offender" because it would have constituted "nothing more than harmless surplusage," and that, in any event, "it should never be viewed as error for the State to follow the law." Id. at 14-15.

12

"By permitting the State to file the habitual offender count, the trial court impliedly found good cause." Jackson v. State, 938 N.E.2d 29, 39 (Ind. Ct. App. 2010), trans. denied. We review a trial court's finding of good cause for an abuse of discretion. Id. "An abuse of discretion occurs 'only where the decision is clearly against the logic and effect of the facts and circumstances.'" Id. (quoting Palmer v. State, 704 N.E.2d 124, 127 (Ind. 1999)). Also, we observe that "[a] defendant who challenges the State's filing of an habitual offender allegation on the ground that it is filed outside of the time limit must demonstrate that he was prejudiced." Id. (citing Daniel v. State, 526 N.E.2d 1157, 1162 (Ind. 1988) (discussing Ind. Code § 35-34-1-5(b)(1))). "The purpose of Ind. Code § 35-34-1-5(e) is to allow a defendant sufficient time to prepare a defense for the habitual offender charge." Id.

Here, the State had good cause for amending the habitual offender count because it was merely making clear for the jury what it intended to prove at phase three, and the other two charges contained in the original habitual offender information were muddying the waters in that regard. Gee was on notice that the 1997 and 1998 convictions could be used to prove that he was an habitual offender based upon the initial information; consequently, there can be no prejudice in this regard. To the extent that Gee argues that he was prejudiced by being deprived of a potential "double enhancement" defense, we note that where the State offers "proof of more than two prior convictions," the "additional convictions [are] considered to be harmless surplusage." Elmore v. State, 688 N.E.2d 213, 216 (Ind. Ct. App. 1997), trans. denied. Thus, even had the State not amended the habitual offender charging information, a double enhancement defense

13

would not have precluded the State from obtaining a guilty verdict finding Gee to be an habitual offender because the 1997 carrying a handgun without a license with prior felony conviction and the 1998 theft conviction, the validity of each of which Gee does not challenge, were charged in both the original and amended habitual offender informations. Accordingly, we conclude that the court did not abuse its discretion when it permitted the State to amend the habitual offender charging information.

For the foregoing reasons, we affirm Gee's convictions for possession of a stolen vehicle as a class D felony and possession of a firearm by a serious violent felon as a class B felony and his adjudication as an habitual offender.

Affirmed.

BAILEY, J., and VAIDIK, J., concur.